UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

QUENTEN BOHANEN,

                    Plaintiff,                        Case No. 1:22-cv-809

v.                                                    Honorable Sally J. Berens

UNKNOWN KLINGEL et al.,

                    Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff previously sought (ECF No. 2) and was granted leave to proceed *in forma pauperis* (ECF No. 4). Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 5.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. § 1915A(b) and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litigation Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).

Service of the complaint on the named defendant(s) is of particular significance in defining a putative defendant's relationship to the proceedings. "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc.. v. Michetti Pipe Stringing, Inc.*, 526

U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) (stating that "[p]ursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way that they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's Eighth Amendment claims, Fourteenth Amendment due process claims, and Fourteenth Amendment equal protection claims for failure to state a claim. Plaintiff's First Amendment retaliation and free exercise claims against Defendants Klingel and Dial remain in the case.

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Earnest C. Brooks Correctional Facility (LRF) in Muskegon Heights, Muskegon County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues the

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

following LRF officials: First Shift Lieutenant Unknown Klingel and Corrections Officer Unknown Dial. (Compl., ECF No. 1, PageID.2.)

In Plaintiff's complaint, he alleges that on March 31, 2022, he was waiting to be transferred from LRF "to the Wayne County courthouse for resentencing." (*Id.*, PageID.6.)[2] Defendant Klingel and Plaintiff engaged in a conversation about why Plaintiff was being resentenced. (*Id.*) Defendant Klingel stated, "So your [sic] going back to get resentenced; what did you do assault somebody or one of my staff members?" (*Id.*) Plaintiff replied, "No sir, I didn't assault anybody. There was a mistake on my guidelines and I'm getting a time deduction; that's so stereotypical of you to think otherwise, sir." (*Id.*) Defendant Klingel then stated, "that's the problem, you guys think you are entitled to be treated fairly." (*Id.*) In response, Plaintiff stated: "No sir, the problem is that most corrections staff are only concerned with punishment." (*Id.*) "Defendant Klingel quickly responded saying 'you have no idea what punishment is, but when you return, I'll give you a taste of what punishment is." (*Id.*)

Plaintiff was resentenced on April 4, 2022, and he returned to LRF on April 6, 2022. (*Id.*, PageID.7.) Upon Plaintiff's return to LRF, he was housed in "punitive segregation" by Defendants Klingel and Dial. (*Id.*) Plaintiff states that he "never received any misconduct or administrative hearing after being placed in segregation, 14 to 17 days after returning from court." (*Id.*, PageID.8.)

When Plaintiff asked why he had been placed in punitive segregation, Defendant Klingel responded, "I'm about to get back some of that time the courts took off your sentence. Besides, this is where you need to be so that you can reflect on the crimes you committed." (*Id.*, PageID.6.) Plaintiff advised Defendant Klingel that he is a Muslim and that he needed his Quran, explaining

---

[2] In this opinion, the Court corrects the spelling, capitalization, and punctuation in quotations from Plaintiff's filings.

"this is the holy month of Ramadan." (*Id.*) Defendant Klingel stated that he did not care and told Plaintiff to file a grievance. (*Id.*) Plaintiff filed a grievance regarding the issue on April 7, 2022, and the following day, Defendant Dial brought Plaintiff's state and personal property to him. (*Id.*) Plaintiff "noticed his Quran and prayer rug was missing," and he requested these items from Defendant Dial. (*Id.*) Defendant Dial replied, "I guess you pissed off the wrong supervisor. I wonder who? You should think before you threaten [Defendant] Klingel with a grievance; you are not getting your Quran or prayer rug unless you sign off against Klingel's grievance; I'm not going against my [Lieutenant]." (*Id.*, PageID.7–8.) Plaintiff claims that Defendant Klingel had ordered Defendant Dial to "take Plaintiff's holy Quran and prayer rug." (*Id.*, PageID.8.)

Based on the foregoing allegations, Plaintiff avers that Defendants Klingel and Dial violated his rights under the First, Eighth, and Fourteenth Amendments to the U.S. Constitution. (*Id.*, PageID.8–9.) As relief, Plaintiff seeks a declaratory judgment, as well as compensatory and punitive damages. (*Id.*, PageID.4.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility

standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because Section 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under Section 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## A.    First Amendment Retaliation Claims

Plaintiff alleges that Defendants Klingel and Dial violated his First Amendment rights by retaliating against him. (Comp., ECF No. 1, PageID.8–9.) Specifically, Plaintiff alleges that Defendants retaliated against him by placing him in segregation and by denying him access to his Quran and prayer rug. (*Id.*)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was

motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Although Plaintiff has by no means proven his retaliation claims, taking Plaintiff's allegations as true and in the light most favorable to Plaintiff, the Court may not dismiss his retaliation claims against Defendants Klingel and Dial on initial review.

### B.      First Amendment Religious Exercise Clause Claims

Plaintiff alleges that Defendants Klingel and Dial violated his rights under the First Amendment when they "denied [Plaintiff] his Quran or prayer rug, or his ability to practice his religion (Islam)" during his placement in segregation. (Compl., ECF No. 1, PageID.8.) Plaintiff states that this denial occurred during the month of Ramadan. (*See id.*)

The First Amendment provides "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend I. The right to freely exercise one's religion falls within the fundamental concept of liberty under the Fourteenth Amendment. *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940). Accordingly, state legislatures and those acting on behalf of a state are "as incompetent as Congress" to interfere with the right. *Id.* While "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates retain the First Amendment protection to freely exercise their religion. *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). To establish that this right has been violated, Plaintiff must establish that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) Defendants' behavior infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224–25 (6th Cir. 1987).

At this stage of the proceedings, the Court assumes, without deciding, that Plaintiff has sufficiently alleged his sincerely held religious beliefs and there is no doubt that reading the Quran and using a prayer rug are religious practices. The next consideration is "whether the challenged practice of the prison officials infringes on the religious belief . . . ." *Kent*, 821 F.2d at 1224–25. A practice will not be considered to infringe on a prisoner's free exercise unless it "places[s] a substantial burden on the observation of a central religious belief or practice . . . ." *Hernandez v. C.I.R.*, 490 U.S. 680, 699 (1989). A burden is substantial where it forces an individual to choose between the tenets of his religion and foregoing governmental benefits or places "substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 734 (6th Cir. 2007) (citations omitted).

Although Plaintiff has by no means proven his First Amendment free exercise claims, at this stage of the proceedings, taking Plaintiff's allegations as true and in the light most favorable to him, the Court concludes that Plaintiff's First Amendment free exercise claims against Defendants Klingel and Dial may not be dismissed on initial review.

### C.     Eighth Amendment Claims

Plaintiff claims that Defendants Klingel and Dial violated his rights under the Eighth Amendment by "illegal[ly]" placing him in segregation. (Compl., ECF No. 1, PageID.9.)

The Eighth Amendment prohibits punishments that are not only physically barbaric, but also those which are incompatible with "the evolving standards of decency that mark the progress of a maturing society," or which "involve the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 102–03 (1976) (internal quotation marks omitted). To establish an Eighth Amendment claim, the prisoner must show that he was deprived of the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Conditions that are restrictive or even harsh, but are not cruel and unusual under contemporary standards, are not

8

unconstitutional. *Id.* Thus, federal courts may not intervene to remedy conditions that are merely unpleasant or undesirable.

Placement in segregation is a routine discomfort that is "part of the penalty that criminal offenders pay for their offenses against society." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). Although Plaintiff may have been denied certain privileges because of his detention in segregation, he fails to allege any facts to show that he was denied basic human needs and requirements. The United States Court of Appeals for the Sixth Circuit has held that without a showing that basic human needs were not met, the denial of privileges as a result of administrative segregation cannot establish an Eighth Amendment violation. *See Evans v. Vinson*, 427 F. App'x 437, 443 (6th Cir. 2011); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008). Moreover, Plaintiff cannot bring an Eighth Amendment claim for emotional or mental damages because he does not allege a physical injury. *See* 42 U. S.C. §1997e(e); *see also Hudson*, 503 U.S. at 5; *Harden-Bey*, 524 F.3d at 795. As a result, Plaintiff fails to state an Eighth Amendment claim against Defendants Klingel and Dial.

### D.    Fourteenth Amendment Due Process Clause Claims

#### 1.    Placement in Segregation

Plaintiff alleges that his due process rights were violated when he "was denied an administrative hearing before being placed in segregation." (Compl., ECF No. 1, PageID.9.)

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the

procedures attendant upon that deprivation were constitutionally sufficient . . . ." *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

The United States Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, the Supreme Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. 515 U.S. 472, 484 (1995). According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence," or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484, 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995). Further, in *Sandin*, the Court held that regardless of the mandatory language of the prison regulations, the inmate did not have a liberty interest because his placement in administrative segregation did not constitute an atypical and significant hardship within the context of his prison life. *Sandin*, 515 U.S. at 484; *see also Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997). Without a protected liberty interest, plaintiff cannot successfully claim that his due process rights were violated because "[p]rocess is not an end in itself." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983).

Here, Plaintiff does not allege that his placement in segregation affected the duration of his sentence, and as explained below, he fails to show that his placement in segregation constituted an "atypical" and "significant deprivation." *Sandin*, 515 U.S. at 484, 486. In *Sandin*, the Supreme Court concluded that placement in segregation for 30 days did not impose an atypical and significant hardship. *Id.* Similarly, the Sixth Circuit has held that placement in administrative segregation for two months does not require the protections of due process. *See Joseph v. Curtin*,

410 F. App'x 865, 868 (6th Cir. 2010) (finding that 61 days in segregation is not atypical and significant). Instead, generally only periods of segregation lasting for several years or more have been found to be atypical and significant. *See, e.g.*, *Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (concluding that 13 years of segregation implicates a liberty interest); *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (finding that eight years of segregation implicates a liberty interest).

Based on the facts alleged in Plaintiff's complaint, the duration of Plaintiff's placement in segregation is unclear; however, nothing in the complaint suggests that he was held in segregation for an extended period. Although the complaint's phrasing could suggest a different interpretation, Plaintiff may have been housed in segregation for approximately 14 to 17 days. (*See* Compl., ECF No. 1, PageID.8 (stating that Plaintiff "never received any misconduct or administrative hearing after being placed in segregation, 14 to 17 days after returning from court").) In any case, Plaintiff fails to allege any facts to show that he was held in segregation for a period of time that would constitute an atypical and significant deprivation.

Accordingly, for the reasons set forth above, Plaintiff fails to state a Fourteenth Amendment due process claim regarding his placement in segregation.

### 2.    Deprivation of Property

Plaintiff also alleges that the "denial of Plaintiff's Quran and prayer rug . . . constituted denial of due process." (Compl., ECF No. 1, PageID.9.)

To the extent that Plaintiff alleges that he was deprived of property without due process of law, this claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, an individual deprived of property by a "random and unauthorized act" of a state employee cannot maintain a federal due process claim unless the state fails to afford an adequate post-deprivation remedy. *Id*. at 541. If an

adequate post-deprivation remedy exists, the deprivation, while real, is not "without due process of law." *Id.* at 537. This doctrine applies to both negligent and intentional deprivations of property, as long as the deprivation was not pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984). Plaintiff must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). The Sixth Circuit has noted that a prisoner's failure to sustain this burden requires dismissal of his Section 1983 due process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Here, Plaintiff fails to allege that his state post-deprivation remedies are inadequate. Plaintiff has available to him numerous state post-deprivation remedies. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. MDOC Policy Directive 04.07.112 ¶ B (eff. Apr. 26, 2021). Moreover, aggrieved prisoners may submit claims for property loss of less than $1,000.00 to the State Administrative Board. Mich. Comp. Laws. § 600.6419; MDOC Policy Directive 03.02.131 (eff. Oct. 21, 2013). Finally, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state or any of its departments or officers." Mich. Comp. Laws § 600.6419(1)(a) (eff. Nov. 12, 2013). The Sixth Circuit has specifically held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff alleges no reason why a state-court action would not afford him complete relief for the deprivations, either negligent or intentional, of his personal property. Accordingly, Plaintiff's Fourteenth Amendment due process claim regarding the deprivation of his property will be dismissed.

E.      **Fourteenth Amendment Equal Protection Clause Claims**

Plaintiff alleges that by denying Plaintiff his Quran and prayer rug, Defendants Klingel and Dial engaged in "religious/racial discrimination" in violation of the Equal Protection Clause of the Fourteenth Amendment. (Compl., ECF No. 1, PageID.9.)

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). When a law adversely impacts a "suspect class" such as one defined by race, alienage, or national origin, or invades a "fundamental right," such as speech or religious freedom, the rigorous "strict scrutiny" standard ordinarily governs, whereby such laws "will be sustained only if they are suitably tailored to serve a compelling state interest." *City of Cleburne*, 473 U.S. at 440. However, while a convicted prisoner does not forfeit all constitutional protections by virtue of his confinement, "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights . . . ." *Price v. Johnston*, 334 U.S. 266, 285 (1948). "The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives—including deterrence of crime, rehabilitation of prisoners, and institutional security." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted).

To establish a violation of the Equal Protection Clause, an inmate must show that the defendants purposefully discriminated against him. *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977). Such discriminatory purpose must be a motivating factor in the actions of the defendants. *Id.* at 265–66. "A plaintiff presenting a race-based equal protection claim can either present direct evidence of discrimination, or can establish a prima facie case of discrimination under the burden-shifting scheme set forth in *McDonnell Douglas Corp. v. Green*,

411 U.S. 792 (1973)." *Umani v. Mich. Dep't of Corr.*, 432 F. App'x 453, 458 (6th Cir. 2011) (citing *Arendale v. City of Memphis*, 519 F.3d 587, 603 (6th Cir. 2008)).

Here, Plaintiff alleges that Defendants engaged in "racial discrimination." (Compl., ECF No. 1, PageID.9.) However, Plaintiff's allegations of discriminatory treatment based on race are wholly conclusory. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under Section 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Plaintiff fails to allege sufficient facts to support a claim of intentional race discrimination by either direct or indirect evidence. *See Davis v. Prison Health Servs.*, 679 F.3d 433, 440 (6th Cir. 2012) (discussing the distinction between direct and indirect methods of proving discrimination). First, Plaintiff fails to allege any facts constituting direct evidence of discriminatory motive or purpose. *See Umani*, 432 F. App'x at 458 ("[D]irect evidence of discrimination does not require a fact-finder to draw any inferences in order to conclude that the challenged . . . action was motivated at least in part by prejudice against members of the protected group." (citation omitted)); *see also Tibbs v. Calvary United Methodist Church*, 505 F. App'x 508, 512 (6th Cir. 2012) (discussing that "[d]irect evidence is composed of only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor" (citation omitted)). Second, Plaintiff fails to allege a *prima facie* claim under the indirect, burden-shifting framework of *McDonnell Douglas*, 411 U.S. 792, because he fails to allege that other inmates who were not members of the protected class were treated differently and were similarly situated in all relevant respects. *See Umani*, 432 F. App'x at 458.

Furthermore, Plaintiff fails to state an equal protection claim regarding "religious" discrimination. As an initial matter, Plaintiff specifically alleges that he was denied his Quran and prayer rug "*in retaliation* to Plaintiff's protected conduct." (Compl., ECF No. 1, PageID.9.) It is

clear that Plaintiff believes that denying him these items constituted religious discrimination; however, Plaintiff does not allege that he was denied the items *because of* his religion. Instead, Plaintiff alleges that he was denied these items because Defendants retaliated against him for engaging in protected conduct, such as filing grievances. Regardless, setting this issue aside, Plaintiff fails to identify any comparative prisoners. Indeed, besides Plaintiff's vague reference to "religious" discrimination and his conclusory assertion that Defendants' actions violated the Equal Protection Clause, Plaintiff's amended complaint contains no facts or allegations to support his equal protection claim. *See Iqbal*, 556 U.S. at 678 (The tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements.).

Moreover, to the extent that Plaintiff intended to assert an equal protection claim in a class-of-one case, he fails to state such a claim. "[T]he hallmark of [a 'class-of-one'] claim is not the allegation that *one individual* was singled out, but rather, the allegation of arbitrary or malicious treatment not based on membership in a disfavored class." *Davis v. Prison Health Servs.*, 679 F.3d 433, 441 (6th Cir. 2012) (alterations in original) (citations omitted); *see Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 592 (9th Cir. 2008) ("The 'class of one' theory . . . is unusual because the plaintiff in a 'class of one' case does not allege that the defendants discriminate against a *group* with whom she shares characteristics, but rather that the defendants simply harbor animus against her *in particular* and therefore treated her arbitrarily." (emphasis in original)). A plaintiff "must overcome a 'heavy burden' to prevail based on the class-of-one theory." *Loesel v. City of Frankenmuth*, 692 F.3d 452, 462 (6th Cir. 2012) (citation omitted).

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). "'Similarly situated' is a term of

art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)). Even viewing Plaintiff's equal protection claim as a class-of-one claim, Plaintiff's equal protection claims are wholly conclusory. Plaintiff fails to allege any facts to demonstrate that his fellow inmates were similar in all relevant aspects. Plaintiff's conclusory allegations simply do not suffice to state a claim.

Accordingly, for the reasons set forth above, the Court will dismiss Plaintiff's Fourteenth Amendment equal protection claims against Defendants Klingel and Dial.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's Eighth Amendment claims, Fourteenth Amendment due process claims, and Fourteenth Amendment equal protection claims will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's First Amendment retaliation and free exercise claims against Defendants Klingel and Dial remain in the case.

An order consistent with this opinion will be entered.


Dated:   December 8, 2022                      /s/ Sally J. Berens
                                          SALLY J. BERENS
                                          U.S. Magistrate Judge